PARIENTE, J., concurring in part and dissenting in part.
 

 I concur with all the proposed amendments being adopted, but I dissent from the Court's decision to not adopt the Appellate Court Rules Committee's ("the Committee") unanimously proposed amendment to Florida Rule of Appellate Procedure Rule 9.030, which would "requir[e] that matters within the circuit court's jurisdiction under rule 9.030 be considered by a panel of three judges." Per curiam op. at 1218-19.
 

 Practitioners, judges, and this Court have known for almost two decades of the lack of uniformity across the State in how circuits handle their appellate jurisdiction. We clearly have the authority to finally address this issue, which, in my view, should be dealt with now by adopting the Committee's proposed amendment to protect litigants' best interests rather than appointing a special workgroup to again study this issue. However, because the Court does not adopt the amendment to rule 9.030, I urge the workgroup to study only the logistics of concerns raised by the smaller circuits and not the merits or wisdom of uniformly employing three-judge
 appellate panels in the circuit courts across the State.
 

 Without question, requiring three-judge appellate panels at the circuit court level is essential to protecting litigants' due process rights, including the right to meaningful appellate review. This is particularly clear when considering the limited scope of the second-tier review of those decisions by the district courts of appeal. As the Committee explains, this amendment "would not only make the appellate process consistent in the circuit and district courts" but would also "alleviate concerns that a review by a single circuit judge could be perceived as simply substituting one judge's opinion for another." Regular-Cycle Report of the App. Ct. Rules Comm. (Report) at 4;
 
 see
 

 Haines City Cmty. Dev. v. Heggs
 
 ,
 
 658 So.2d 523
 
 , 530 (Fla. 1995).
 

 The concern caused by allowing appellate review by one circuit judge is clear when viewed in light of the district courts' review of circuit court appellate decisions, which is "limited to whether the circuit court afforded procedural due process and whether the circuit court applied the correct law."
 
 Heggs
 
 ,
 
 658 So.2d at
 
 530 ;
 
 see
 

 Educ. Dev. Ctr., Inc. v. City of W. Palm Beach Zoning Bd. of Appeals
 
 ,
 
 541 So.2d 106
 
 , 108 (Fla. 1989) ;
 
 City of Deerfield Beach v. Vaillant
 
 ,
 
 419 So.2d 624
 
 , 626 (Fla. 1982) ;
 
 Martin Cty. v. City of Stuart
 
 ,
 
 736 So.2d 1264
 
 , 1266 (Fla. 4th DCA 1999). Citing the American Bar Association's Standards Relating to Court Organization (1990), the Committee explains that "[t]he value of three-judge panel review is a recognized tenet of appellate procedure," which facilitates "collective, consensus-based review of a lower-tribunal's ruling," in turn "promot[ing] better decision making, reduc[ing] mistakes, eliminat[ing] extremes and bias, and promot[ing] stability and fairness." App. Ct. Rules Comm.'s Resp. to Comments (Resp.) at 3.
 

 The problems created by lack of uniformity across the circuits regarding their appellate jurisdiction has been clear for almost two decades.
 
 [4]
 
 Indeed, in 2000, this Court referred the issue "to the Rules of Judicial Administration Committee of The Florida Bar for study."
 
 Fla. Power & Light Co. v. City of Dania
 
 ,
 
 761 So.2d 1089
 
 , 1094 (Fla. 2000). After studying the issue, that committee rejected the uniform adoption of three-judge panels not because it was jurisprudentially unsound but "due to fiscal concerns of smaller counties and circuits." Report at 4. Since then, the Committee has undertaken the task of studying this issue, and, consequently, its proposal in this case is based on "substantial research." Per curiam op. at 1219;
 
 accord
 
 Report at 4.
 

 As I expressed in 2001, requiring three-judge appellate panels at the circuit court level would eliminate the lack of uniformity between the circuits, help to ensure well-reasoned opinions, and facilitate "more limited second-tier review" by the district courts of appeal "as well as this Court's review of the" district courts' decisions.
 
 Dusseau v. Metro. Dade Cty.
 
 ,
 
 794 So.2d 1270
 
 , 1277 (Fla. 2001) (Pariente, J., concurring, joined by Anstead and Lewis, JJ.). Similarly, Justice Lewis, writing for the majority in
 
 Ivey v. Allstate Insurance Co.
 
 ,
 
 774 So.2d 679
 
 (Fla. 2000), explained how a written opinion by a three-judge appellate panel of circuit court judges aids the district courts of appeal in their more limited second-tier review mandated by our current jurisprudence:
 

 Allstate specifically asserted to this Court that "as a practical matter, the appellate courts need to be able to review the circuit courts sitting in their appellate capacity because [the circuit courts] are not really equipped to decide appellate cases, to decide issues of law." In this case, a three-judge panel of the circuit court issued a well-reasoned, written opinion thoroughly supported by appropriate reference to Florida decisions. The circuit court performed exactly as one would expect from an appellate court.
 

 If a problem is occurring in our current appellate system because a large number of circuit court decisions are unreported, then perhaps that issue should be addressed and resolved. The solution is not, however, a second level of appellate review when a district court simply disagrees with the decision of a circuit court sitting in its appellate capacity.
 
 The concept of certiorari review should have a recognized uniformity of application.
 
 Thus, we conclude that the district court below inappropriately exercised certiorari review.
 

 Id.
 

 at 683
 
 (alteration in original) (emphasis added).
 

 While disparity is of concern in all cases, it is especially prevalent in zoning and other administrative decisions. As I explained in
 
 Dusseau
 
 :
 

 I would further point out that the circuit court sat in a three-judge panel that produced a reasoned and detailed majority and dissent. This in turn facilitated the more limited second-tier review of the Third District as well as this Court's review of the Third District's decision. We previously have noted the disparity of the practices among circuits and referred this matter to the Rules of Judicial Administration Committee for study.
 
 See
 

 Florida Power & Light
 
 ,
 
 761 So.2d at 1094
 
 . In light of the far-reaching impact of zoning decisions, we should not continue to sanction a statewide system that allows a single circuit judge to have the identical appellate reviewing authority as a three-judge panel and that also requires the district court of appeal to accord the identical deference to the circuit court's decision regardless of whether the decision was made by a one-judge or three-judge court.
 

 Id.
 
 at 1278 (Pariente, J., concurring). Likewise, as the majority in
 
 Dusseau
 
 explained in remanding the case to the circuit court:
 

 We reiterate that the "competent substantial evidence" standard cannot be used by a reviewing court as a mechanism for exerting covert control over the policy determinations and factual findings of the local agency. Rather, this standard requires the reviewing court to defer to the agency's superior technical expertise and special vantage point in such matters. The issue before the court is not whether the agency's decision is the "best" decision or the "right" decision or even a "wise" decision, for these are technical and policy-based determinations properly within the purview of the agency. The circuit court has no training or experience-and is inherently unsuited-to sit as a roving "super agency" with plenary oversight in such matters.
 

 Id.
 
 at 1275-76 (majority).
 

 While the Court today recognizes that this is an "important issue" and finds "merit in the Committee's argument that appeals to the circuit court should be handled in a more uniform manner across the state," the Court nevertheless chooses to send this amendment back for study yet again. Per curiam op. at 1220. Specifically, the Court instructs that a workgroup consider "whether the circuit courts should be uniformly required to hear appeals in panels" and "whether other changes to the
 process for appellate review of county court decisions would improve the administration of justice." Per curiam op. at 1220. But the Committee has already considered this issue and unanimously recommended that the Court do so.
 

 Indeed, as the Court acknowledges, the Committee has determined that requiring three-judge panels would "serve as an important safeguard to the rights of litigants" and would "promote[ ] better decision making, reduce[ ] mistakes, eliminate[ ] extremes and bias, and promote[ ] stability and fairness." Per curiam op. at 1219. However, the Court again defers taking action by declining to adopt the Committee's unanimous recommendation "at this time." Per curiam op. at 1220.
 

 While I am not unsympathetic to the concerns of smaller Florida circuits, I am skeptical as to whether the disparity between the circuits is caused by lack of capacity or is simply the byproduct of local tradition. For example, in the Sixteenth Circuit, any party can request a three-judge panel, which will be assigned "at the court's discretion." In the Seventh Circuit, if the litigant is from Flagler, Putnam, or St. Johns, the appeals are assigned to a single judge. But, in the same circuit, if the litigant is in Volusia County, appeals are assigned to a two-judge panel. There does not appear to be any particular reason-indeed, none was provided-for the differences presented among these two circuits.
 

 The comments from the chief judges of the Sixteenth and Second Circuits opposing the Committee's proposal express geographical concerns as well as concerns that requiring three-judge panels would "result in an increased workload" and "would ultimately make the timely disposition of appeals more challenging." Per curiam op. at 1219. As to the geographic concerns, in this day and age with video-conferencing and other technology, I do not believe the concern is insurmountable. Further, as in the district courts, not all cases have to be heard by oral argument. While it is simpler and perhaps more efficient for one circuit judge to hear an appeal from one county court judge, due process concerns must prevail. Due process and justice demand uniformity of appellate decisions.
 

 Notwithstanding, because the majority does not adopt this amendment today, in the interim, until this matter is studied by the special committee convened by the Court, I would urge the circuits to consider the following: (a) requiring three-judge panels when requested by a litigant; (b) requiring three-judge panels in petitions for certiorari from zoning decisions; (c) making the decision to grant or deny oral argument within the discretion of the appellate panel; and (d) requiring oral argument if requested by the parties when a single judge hears an appeal from the county court and requiring a written decision in those instances.
 

 CONCLUSION
 

 It is time to adopt the Committee's unanimous proposal to require "that matters within the circuit court's jurisdiction under rule 9.030 be considered by" a three-judge panel to facilitate fair and uniform appellate proceedings across the State of Florida and ensure that litigants' constitutional right to due process is protected. Per curiam op. at 1219. Employing three-judge panels at the circuit court level is critical because it would properly align the appellate process for cases that begin in the county court with the appellate process for cases that begin in the circuit court, allowing the district courts of appeal to be appropriately deferential to circuit court appellate decisions.
 
 See
 

 Heggs
 
 ,
 
 658 So.2d at 531
 
 .
 

 Accordingly, while I concur with the Court's adoption of the other proposed rules, I dissent as to this Court's decision to again defer the adoption of three-judge
 panels for circuit courts sitting in their appellate capacity.
 

 See
 

 Coastal Dev. of N. Fla., Inc. v. City of Jacksonville Beach
 
 ,
 
 788 So.2d 204
 
 , 205 n.3 (Fla. 2001) ;
 
 Fla. Power & Light Co. v. City of Dania
 
 ,
 
 761 So.2d 1089
 
 , 1094 (Fla. 2000) ("No statewide criterion exists at this time.");
 
 see also
 

 Broward Cty. v. G.B.V. Intern., Ltd.
 
 ,
 
 787 So.2d 838
 
 , 849-53 (Fla. 2001) (Pariente, J., dissenting, joined by Anstead, J.).